NO. 7287.    **7287** STATE OF LOUISIANA

F. J. LEWIS MANUFACTURING CO

     VS

                         COURT OF APPEAL

MORGANS LA. & TEXAS R. R. & S. S. CO.    PARISH OF ORLEANS.

St. Paul, Judge.

The defendant carrier furnished to plaintiff a defective tank car from which a quantity of creosote oil leaked and was lost.

The defense is in effect that the oil was lost wholly through plaintiff's own negligence.

Frank Keshner foreman for plaintiff at that time and for three years afterwards, but not now in its employ,, testified that the car was delivered at plaintiff's plant on a Sunday morning and loaded late that evening: that he discovered the leak about six o'clock next mornin that he notified plaintiff's general manager by telephone; that the car could not be unloaded where it stood, and could not be moved to the unloading place because of other loaded cars between it and the place for unloading; that he at once procured a wash tub from his home nearby and put two men with buckets to carry off the oil; that a large quanti of oil was thus saved; that about nine o'clock next morning the switchi crew arrived and pulled the car to where it could be unloaded; that th contents of the car were then gauged by the manager and unloaded; that he could not say how much oil was saved by the men with buckets.

R. M. Lynch, the general manager for plaintiff, and now connecte with it, testified that Keshner the foreman notified him of the leak monday morning by the telephone; that he at once notified defendant's representative, (Mr. Comstock, who died since then; but the witness not know it); that the latter asked him to have the car unloaded as s as possible; that he telephoned the connecting carrier on whose line plant is situated for a switch engine and crew to place the car wher it be unloaded; that when he reached the plant the car was not at the unloading place, but about nine o'clock a switch engine arrived and p the car where it could be unloaded; that he thereupon at once guaged contents and had them pumped into plaintiffs tanks; and the car remov

For the defendant, three members of a switching crew of the cor carrier, testified that the car was placed at the plant on Sunday mor that they called for it about four o'clock the same evening: that the

100

ar was then loaded; that they saw the leak, which was large and plainly
isible, and called the attention of plaintiffs foreman thereto; that
hey moved the car at once to where it could be unloaded, and then left;
at they called in regular course about nine o'clock next morning, and
und the car unloaded, and removed it.

A clerk also ######## in the employ of the connecting carrier,
stified that he received no telephone call for an engine on the Monday
rning; but his testimony is of no value, for he testified only "from
e record", independently of which he had no recollection; and the
cord was not produced.

The defendant also offered to prove by this last witness that four
ths after the occurence in question, the witness Keshner admitted to
that the leak had been discovered before noon on Sunday. It also
fered to prove by another witness that on three several occasions, four,
e and six months after the occurrence Keshner made the same admission
him. But the trial judge excluded this evidence.

1.

In addition to the fact that the trial judge, who saw and heard the
nesses, did not accept the version given by those for the defendant,
re are certain points about their testimony which make it also impossible
us to do so.

1. The first and third witnesses had, before testifying, refreshed
ir memories from records not made by themselves; one of them not even
ining the original record, but relying upon a letter from the party
osed to have kept the record; the other "had to go to the record to
ore positive."

2. The second witness, when asked whether any oil had been saved,
ered, "I did see two barrels of creosote oil alongside of the fence;"
h, if it has any meaning, either renders superfluous, and therefore
kely, the giving of notice to Keshner, or corrobprates the latters
imony.

3. It is inconceivable that the car was at the unloading place
its contents could have been unloaded in a moment, and that Keshner,
a "home" tp provide for, should have been so reckless of holding his

101

position as to let several hundred dollars worth of oil leak out right where his employer must perceive it the first thing, and see at once the gross stupidity or wanton indifference of his hired man.

4. It is even more inconceivable that Lynch, supposedly capable of holding a manager's position in a large business, should have retained for an hour, not to say for three years, an employee as incompetent or unfaithful as defendant's witness would ######## make out Keshner to be.

## 11.

The trial judge erred technically in excluding the testimony as to alleged admissions made by Keshner after the occurrence. These were doubtless admissible for the purpose for which they were offered, to wit, to impeach him as a witness by showing alleged contradictory statements.

But we will no more believe that Keshner would, wholly gratuitously, jeopardize his position on four different occasions than that he did so on only one occasion. Such testimony would therefore carry no weight with us, and since it would not change the result it would serve no purpose to remand the case in order to have it heard.

"A cause will not be remanded for the admission of evidence even though improperly excluded, when the evidence is such that, even if admitted the result would not be changed."
Miller vs Lafontaine, 8 Court of Appeal 162.
Rhea vs Thompson Motor Co, No. 7144 (lately decided).

## 111.

Defendant is clearly entitled to credit for the oil saved by means of the wash tub and buckets. As plaintiff can not fix the amount we must allow for the most that could have been saved in the time when these were in use. The car was loaded late Sunday evening, say six o'clock, and was unloaded late ########### Monday morning: this was fifteen hours. The leak was discovered at six o'clock Monday morning, or three hours before it was unloaded. One fifth of the leakage must have occured in that time, and it is possible that this one fifth was saved. The judgment must therefore be reduced accordingly.

It is therefore ordered that the judgment appealed from be reduced from $629.37 to $503.50 (Five hundred and three 50/100 Dollars) and as thus amended the judgment is affirmed: plaintiff' to pay costs of this court and defendant the costs of the court below.